2875 New York Marine & General et al. v. Federal Insurance Company Good morning, Your Honors. May it please the Court. Selena Ellis Walsh-Pizzi O'Reilly Falanga for the appellant. Excuse me, I'm going to interrupt for just a second. Could you move the microphones down a little bit so we can hear you? Absolutely. And I'm going to apologize in advance if I'm coughing. I have one of those coughs that's just been lingering after that cold. The District Court committed reversible error by granting summary judgment in favor of New York MAGIC and holding that New York MAGIC had no duty to defend or to indemnify LM Insurance and Federal Insurance. First, I will address the duty to defend. Under New York law, a duty to defend attaches if there is a possibility, however unlikely, that any allegations made in an underlying action fall within the ambit of the additional insured language in an insurance policy. Here, the District Court applied the ROC standard when analyzing New York MAGIC's duty to defend. Under New York law, the duty to defend is ascertained by comparing the allegations in the complaint or a third-party complaint to the plain language in the insurance contract. And the duty to defend exists even if those allegations are false and groundless. So this is a pretty broad standard. Could you talk about the allegations, though? Because what concerned me here is that there are allegations of negligence, but there are no factual allegations that I saw in the complaint that bear on negligence and support in any way any of the theories of liability. Under New York law, there's, you know, it's just notice pleading. And so here there are allegations, and they're not as robust as they may have been in the District Court. So the Allstate decision in New York from 1992 says the analysis depends on the facts that are pleaded, not on conclusory assertions. Sure. I mean, the Allstate case I think was an outlier because that was about sexual abuse, and so I think there were other factors mitigating the Court's determination there. I'm sorry. So I just want to be very clear that you're asking us to say that conclusory allegations are enough? Well, it's not necessarily conclusory allegations, but there are some... You're pushing back on the case that says conclusory allegations are not enough. So what are we... Right. We're looking for rules. We're going to have to put something down on paper. Sure. Are you saying that the rule is that conclusory allegations are sufficient? I'm saying that in general, the allegations in a complaint are sufficient if they give any rise to... If they fit within the policy. And there are times when there are not going to be a significant amount of facts in a complaint because that happens to be the standard in New York State courts. And there are a number of cases where we cite where the allegations are found to create the duty to defend even though the allegations tend to be pretty boilerplate. And here we... There's the allegations, in the complaint, in the third-party complaint, in PBM's answer where they also, in an affirmative defense, point to their employees potentially having done wrongdoing herself. But the contract language, what do we do about the contract language also having that PBM to be the proximate cause of the injury? Right. So for the duty to defend, there doesn't have to be a finding of proximate cause. It has to be the mere possibility of proximate cause. Well, let me press on that a little bit because the cases use both the language, even potentially within the language of the policy, with regard to proximate cause, for example, or a reasonable possibility. And those seem to be in tension to each other, with each other. Don't you agree? Yeah. I do think that there is, you know... But by and large, courts try and find a duty to defend. And so the goal is, even if there's a possibility... I mean, the standard says even when the allegations are false or groundless, you find a duty to defend. And so... Well, false can't be adjudicated at the motion-to-dismiss stage. So we have to... I mean, I think what the district court was responding to here was it seems highly unlikely that someone who's wiping down a glass door is going to knock it off and, you know, crush herself. You know, one doesn't have that kind of force. And so it seems enormously kind of a breach to say that there's even potentially within the language of the insurance policy with regard to proximate cause. On the duty to defend, it's not the court's role to make a determination with respect to liability and to do that kind of fact-finding. If there's a possibility... You know, this is... Here, the allegation is she was... And in her deposition, she states she was manipulating the door. She was cleaning the door. She was pressing a button when the alleged injury occurred. The services contract states that PBM was responsible for the cleaning of this door. It's within the scope of the janitorial contract. So this wasn't a random door. This was a door that she was required to work on. And so those facts do give rise to a duty to defend, a possibility that there could have been some negligence on her part that could have resulted in her potential... Is it a possibility or a foreseeability? What is the law? It's a possibility or potential. Even when interpreting proximate cause? Yeah. Can I ask, do you think... What is the relationship in terms of the direction between the duty to defend and the duty to indemnify? If we find that there was no duty to defend, would we also find that there's no duty to indemnify or is there a difference? There's a difference. Courts typically wait until the underlying action has been resolved in order to make a determination with respect to the duty to indemnify because that's based on the actual facts in the case and how... And the fact finder usually has to find proximate cause, has to make a determination with respect to liability. And here the district court didn't do that and also didn't provide any analysis with respect to the duty to indemnify. It's in a throwaway line in the conclusion. And so it's not entirely clear what the district court's reasoning was for making that determination. Isn't the reasoning if you found no possibility of liability for purposes of duty to defend, then a fortiori you're not going to have liability for purposes of indemnity? It's possible, but there's... I don't want to surmise what the district court was doing there. No, but I'm trying to understand your theory of how the... Let's assume that you lose on the duty to defend. Sure. I'm trying to understand sort of the rationale for keeping the duty to indemnify alive. Is it the possibility that in discovery we find out that it's her fault, that she in fact did hit the panel and at that point things might change in this to the duty to defend and... Yes, Your Honor. Okay. Yeah. The case has been going on in the underlying action since 2016. It's still ongoing. Discovery is still open. The plaintiff is scheduled to take another deposition, to be deposed again in May because she pled new facts with respect to her injury. So it's still very much an open issue. All the parties are still in the underlying action. What are the alleged... The extent of the alleged underlying injuries to Ms. Gutzman? My understanding is that there was some sort of shoulder injury and that the plaintiff has potentially had a surgery and so that... It wasn't pled previously and so that is going to be the subject of the upcoming deposition. So it's going to be about her injuries. Thank you. I will have an opportunity to hear from you again in rebuttal. Thank you. And now we'll turn to Attorney Midland. Good morning. Thank you. Jennifer Midland for the appellee in New York Marine and General Insurance Company. I'm sorry. I'm going to have to ask you to speak up. Jennifer Midland for the appellee in New York Marine and General Insurance Company. Good morning, Your Honors. So as you know, this case prevents a very narrow issue of what is required to trigger additional insured coverage under an endorsement that affords coverage for liability caused in whole or in part by the named insured's acts or omissions or the acts or omissions of those acting on its behalf when the named insured is the employer of the underlying plaintiff. And this was addressed in the New York Court of Appeals decision of Burlington v. New York City Transit Authority. In that case, the Court of Appeals held that the prior additional insured endorsements which have a rising out of wording are not the equivalent of caused by and that caused by requires proximate cause or some negligence or actionable act or omission on the part of the named insured or those acting on its behalf. So under the prior wording, it was almost uniformly held that any time the plaintiff was an employee, that was sufficient to trigger a duty to defend. Under Burlington and under the caused by wording, plaintiff's status as an employee without more is not enough to trigger a duty to defend. And similarly, the mere filing of a third-party complaint with nothing more than conclusive allegations of liability are insufficient to trigger a duty to defend. What happens in this case if discovery proceeds along and it turns out that a video comes to light of the plaintiff in the state court action taking a hammer to the panel before it falls, right? Clearly an act that lays fault at the feet of the employer. In that circumstance, does a duty to defend arise or do they have to amend their pleadings or what happens? Just for purposes of this case, and then I'll address your question more generally, as counsel mentioned, discovery was complete and it was, this case was on the trial calendar and it was recently reopened because it was disclosed that the plaintiff had an additional surgery. So the only additional discovery that's ongoing is related to her damages and to this additional surgery. So discovery as to liability is complete and I do not expect that there will be. No, no, I understand. But in general, sure, the duty to defend is triggered by well-pleaded factual allegations or by facts extrinsic to the complaint that create a reasonable possibility of coverage. If there were other facts outside of those pleadings that pointed to liability on the part of PBM or on the underlying plaintiff, those can be presented in support of a tender, in support of a request for coverage and that was not done here. There are no extrinsic facts that create any potential for coverage or for liability on the part of PBM. So partly I'm asking this because I'm thinking about this relationship between the duty to defend and the duty to indemnify because it does seem as a matter of logic that you lose on the duty to defend or you win on the duty to defend. Indemnify, well, it doesn't work both ways. Right. But in a situation where something changes, if we rule there's no duty to, and again, I understand in this case you're saying discovery is complete, but if we were ruling a year ago because discovery hadn't been complete or whatever was complete. So the duty to defend is broader than the duty to indemnify. It can be triggered by all of those other things. And if there's nothing, no facts extrinsic to the complaint that trigger the duty to defend, then there is likewise no duty to indemnify. I think, you know, maybe that puts a little bit of onus on the tendering party to do a little bit of investigation in advance of their tender and find out some of those facts. But that is what the law is. It's the tendering party's burden to establish that they qualify as an additional insurer. So in the hypothetical where it doesn't appear to be anything plausibly pled in the complaint but then discovery yields something, if the separate court action about coverage rules that there's no duty to defend or indemnify, then that's just a ruling that you're stuck with at that point, despite the change in circumstances. Or you have to come back and reopen it. I was going to say, I mean, I suppose if something came out, they could move to reopen it in that type of situation. But I would think that if there's that kind of possibility, then something to that effect would have been pled in the complaint. And here there is nothing in the complaint beyond just the mere conclusive allegations on the existence of the contract. So take all the other insurance companies out of this and assume that the employee suffers this injury and files a lawsuit alleging that it's her employer's fault, that your client's fault, your insurance fault. Well, she's not going to have pledged it again. I understand why she can't. Okay. Right? But somebody's got to come to court and say that. Somebody's got to hire a lawyer to come and say no workers' comp exclusivity, she can't make the suit. And that's part of the defense. Does New York Marine have a duty to defend to that extent, to be the one to pay the lawyers to come into court and say you can't do that? To defend it's named insured against that? Yes. So the policy has an employer's liability exclusion that excludes coverage for injuries sustained by the employee. And there is an exception for an insured contract. So they only provide coverage for the contractual indemnification claim against the employer but not for the direct negligence claims or not for, in this case, the cross-claims and the third-party claims for common law indemnification and contribution are not covered under the New York Marine policy. But also, like you said, they will be subject to dismissal ultimately because of the workers' comp part. What I'm trying to get at now is way more information than I can process at the speed that I heard it. But I'm trying to get it in the first party. It's kind of easy to say, oh, conclusive reallegations, we're not going to consider them because there's all just insurance companies and somebody's got to defend. What I'm trying to figure out is that if it's comparably conclusory in a first-party situation or in a direct-party situation, is it's still you're out of luck. The insured is out of luck. If somebody sues them with conclusory allegations, they don't get the benefit of defense. No. I mean, the plaintiff's allegations are accorded more leeway, I think, than the third party's own allegations trying to trigger that additional insured coverage in the first instance. Where does it say that? Because I see cases saying the duty, you know, for two additional insureds is sort of the same. It's the same analysis on the duty to a plaintiff. It's the same broad analysis. Sure, if the plaintiff's own allegations against the additional insured raised theories of liability of cost and who are in part by. But there are cases that say when an additional insured's third-party complaint is the sole basis for triggering coverage, that you can scrutinize that a little bit more. I did cite one of them in the brief. But here it's that plaintiff's complaint here does not actually have any allegations of liability caused in whole or in part by PBM. The allegations in plaintiff's complaint are solely relating to the independent negligence and the purported defective condition of this door. She couldn't have sued her employer for negligence, though, right? No, she couldn't. It's going to be vague, right, because that's a vague point. Isn't that right? She couldn't, but she could have alleged that the main defendants, you know, agents, employees, servants, contractors, such as PBM, had some role in certainly in maintaining the door, which she does allege and which PBM does not have. But also in a labor law context, there's always allegations of failing to provide safety devices or failing to provide adequate tools. And there's none of that here because none of that is relevant to her injury. Her injury was caused by this door that fell out of the panel. And in the cases that have considered similar situations where an underlying plaintiff was injured by a defective condition of the premises, they've looked to those contracts, in this case the service contract, to determine the scope of the named insured's obligations with respect to whatever that area is. And so we've cited to Ohio Security against travelers and New York Marine against travelers. In both those cases, the courts held there was no duty to defend the additional insured for plaintiffs that were injured due to an allegedly defective condition of the premises. Even though the employers had control over the means and methods of their employees' work, they had no obligation to maintain the premises and whatever the defective condition was. Can I ask you just a practical question? So we have the tenants insure, the building owners insure, and the employers insure, all of whom have plausible duties to defend. We're potentially finding. Do you agree with that? Potentially, right? Potentially, sure, yes. New York Marine is defending its named insured for what that's worth. It is defending the third party. What happens as a practical matter? Does one agree to take a lead? Do they split the cost three ways and mount a joint defense? What happens? So all of the policies contain other insurance conditions that dictate whether they would be primary to access over or shared with the other insurance. That issue was not reached here because this cost in whole and part by was determinative. But I, and counsel can correct me if I'm wrong, but I believe that that's Federal agreed to be primary to LM's own insurance so that the tenant insurer is providing primary at least defense coverage to the owner. And so should New York Marine have a duty to defend, which of course I don't think it does, a further analysis of those other insurance conditions would be needed. So there would be potential contributions by all or they look more closely at the other insurance clauses to see what the lineup looks like after. I mean, so that would just go to, again, the duty to defend and then the duty to indemnify would still have to follow the facts and whether there was ultimately any proximate cause by either of the respective named insureds. Yeah. Thank you. Thank you very much. Mr. Mills. Thank you. I just have a couple of quick points. In this case, whether there was a defective condition is very much in dispute. I know that opposing counsel raised that in their briefs and she just raised it in her argument. But cases like Ohio Security and New York Marine are distinguishable because there, it was not disputed that there was a defective condition. Here, there is a dispute. And the other parties have noted that Ms. Gonzalez in the underlying action was working on the door. It was part of her duties, whereas in those other cases, the injuries were suffered weren't part of the work of the plaintiffs in the underlying actions. The other point I just wanted to make is there was the possibility for inconsistent rulings when a indemnification determination is made in the district court and not in the underlying action. I think that's something that Your Honor was sort of grappling with. So unless the panel has any other questions, I cede the rest of my time. Thank you, Your Honors. Appreciate it. Thank you both for your arguments. We'll take this case under advisement.